ROGERS, J.
 

 This is a suit for tan accounting on a written contract of employment. The contract, which became effective December 1, 1915, is in the form of a. letter dated September 3,1915, addressed by the president
 
 *877
 
 of the defendant company to the plaintiff and accepted by him. It is couched in these words, viz.:
 

 “ * * * I will pay you a salary of $125.00 per month plus 5 per cent, of the net profits for the year up to $8,500.00. Eor all net profits over and above $8,5QO.OO per annum 50 per cent, of the excess net profit.
 

 “The net
 
 profits, of course, are determined by the auditor of the company, and are arrived at after usual deductions are made for all current expenses, including all salaries and the proper deductions for depreciation on machinery, fixtures and stock and for all bad accounts which are charged off yearly. This is what we have been doing in the past and what is the usual and only proper method.
 

 “It must be understood that the salary of $125.00 per month will be paid monthly, but no advances are to be made on profits before same are determined at the end of the fiscal period. * * *
 

 “I have made it 5 per cent, to $8,500.00 instead of $8,000.00 for the reason that from now on rent has been reduced by $300.00 a year by the landlord in return for improvements which I am now making in our store.”
 

 There is no controversy about plaintiff’s salary, which was subsequently increased to $150 per month, and regularly paid.
 

 Plaintiff remained in the employ of the defendant until May 31, 1919, the end of its fiscal year, when he resigned, and the contract was terminated by mutual consent.
 

 On June 25, 1919, the defendant company notified plaintiff in writing that its books had been balanced, and there was due him $658.-53. Plaintiff refused to accept this amount, and instituted suit claiming a much larger sum as his percentage of the net profits during the period of his employment, after debiting himself with the payments he had received from time to time on account thereof.
 

 The defendant company denied liability for any amount whatever, and alleged that its books had not been finally audited and closed when it notified plaintiff that he was entitled to a balance of $658.53; that, upon the completion of the audit of its books, it ascertained that plaintiff was overdrawn in the sum of $220.84, which it claimed by way of reconvention.
 

 There were two hearings in the case. At the conclusion of the first hearing, the judge a quo appointed J. K. Byrne, a certified public accountant of New Orleans, to make an audit of the books of the defendant company with a view of ascertaining its net profits and the amount thereof due plaintiff under his contract.
 

 The auditor appointed by the court duly filed his report, showing that plaintiff was credited on the books of the defendant company with $455.81 in excess of the amount to which he was entitled. Both parties filed exceptions to the report, and, after taking additional testimony, the case was submitted. The judge a quo adopted the report, except in one particular, viz. the deduction of the federal income and excess profits taxes from the gross profits in order to establish the net profits upon which the agreed percentage of plaintiff should be calculated. In accordance with this ruling, judgment was rendered in favor of plaintiff for $3,032.13. The defendant company appealed, and plaintiff answered the appeal, praying that the amount of the judgment be increased.
 

 There are three questions involved in this ease, viz.:
 

 (1) Are the federal income and excess profits taxes paid by the corporation deductible before determining its net profits in which plaintiff is to share according to their contract?
 

 (2) Does the reference in the contract to the reduction of the defendant company’s rent in consideration of certain improvements it agreed to make to the leased premises justify a credit to the plaintiff?
 

 (3) Is a depreciation charged on machinery prior to the contract properly made on its appreciated value before ascertaining the net
 
 *879
 
 profits, considering sound and' replacement values?
 

 First. There is a disagreement in opinion between the witnesses for plaintiff and the witnesses for defendant as to- whether the federal income and excess profits taxes are properly deductible as expenses in determining the net profits of the business. We think, however, that the weight 'of the testimony supports the affirmative side of the question.
 

 The tax annually exacted by the federal government on net corporate income means, simply, that every dollar of net profit earned by a corporation during the year must bear a certain charge for governmental purposes. It is immaterial whether such charge be designated as an expense or a profit sharing tax, neither the profits of a corporation, nor any one interested in its profits, is immune from its operation. The federal corporate income tax is, therefore, an expense of the corporate business. The mere fact that the tax before its deduction is computed on the basis of the corporate profits does not alter its character. According to the rules of accountancy, the expenditure of money must be considered either as an asset or as an expense. The income tax is clearly not an asset. It must necessarily, therefore, be considered and treated as an expense. Where an employee who, in addition to receiving a stipulated salary, also receives, in the nature of a salary, a percentage of the net profits of a corporation, the net profits necessarily cannot be determined until all expenses, including the income and excess profits tax, is deducted from the profits. And, inasmuch as such additional compensation is to be measured by the net profits the employee has helped to make, his percentage must also be deducted before the tax is found. This is recognized to be the correct rule by the federal revenue law, which provides that, in carrying on any trade or business, all necessary expenses, “including a reasonable allowance for salaries or other compensation for personal services actually rendered,” may be deducted from the gross profits in order to arrive at the net profits on which the income tax is to be computed. Section 214 of the Revenue Law of 1918, 40 St. 1066 (U. S. Comp. St. Ann. Supp. 1919, § 6336ysg, p. 1323). The effect of applying this rule is to reduce the corporate profits as well as to reduce the corporate income tax.
 

 In the case of Dulac Cypress Co. v. Houma Cypress Co., 158 La. 804, 104 So. 722, this court held that under a contract for the division of net profits the federal income and excess profits taxes were properly deductible from the earnings in order to ascertain the profits to be divided; net profits being the gain accruing on an investment after deducting the losses and expenses of the business. We think the rule announced there is controlling of the issue involved here. It is in accord with the decision in Stevens v. U. S. Steel Corp., 68 N. J. Eq. 373, 59 A. 905, that:
 

 “Net profits of a corporation are the net gains which have been actually realized, and which could be quickly distributed without loss by a sale of the assets.” '•
 

 It is also supported by the rule announced by the Supreme Court of the United States in Georgia Railway & Power Co. v. Railroad Commission of Georgia, 262 U. S. 625, 43 S. Ct. 680, 67 L. Ed. 1144, viz.:
 

 “The federal corporate income tax is to be treated as an operating charge, to be deducted in arriving at probable net profits, affirming Galveston Elec. Co. v. Galveston, 258 U. S. 399, 42 S. Ct. 351, 66 L. Ed. 678 where it was said, per Brandéis, Justice:
 

 “In calculating whether the five cent fare will yield a' proper return, it is necessary to deduct from gross revenue the expenses and charges, and all taxes which would be payable if a fair return were earned are appropriate deductions. There is no difference in this respect between state and federal taxes or between income taxes and others.”
 

 
 *881
 
 In the contract between tbe parties, it is expressly provided that the net profits are to be determined by tbe auditor of the company after tbe deduction of current expenses, for depreciation on machinery, fixtures, and stock, and for bad accounts. No exception was made of tbe federal tax. From tbe inception to tbe termination of tbe contract it was deducted from tbe annual profits, and plaintiff was settled with, apparently without objection, on tbe basis of tbe profits found after tbe deduction.
 

 Our conclusion is that the federal income and excess profits taxes paid by tbe defendant corporation were properly deductible from its gross profits in order to determine tbe net profits upon which to predicate additional compensation of tbe plaintiff.
 

 Second. The defendant company expended $1,228.20 for improvements to the leased premises for which tbe lessor allowed a reduction in tbe rent. The auditor of tbe lessee charged $307.05, or one-fourth of tbe total expenditure, as an item of current expense during each of tbe four years tbe property was leased at tbe reduced rental. The expert appointed by tbe court concurred in his opinion that tbe amount expended for tbe repairs was a necessary expense in the nature of rent, and was properly deductible prorated over tbe period of tbe lease. He found, however, and so reported to tbe court, that, for tbe purpose of calculating the commission due plaintiff under bis contract be having conceded a reduction in commission from 5 per cent: on tbe net profits up to $8,000, and 50 per cent, above to 5 per cent, up to $8,500, and 50 per cent, above in lieu of saving $300 in tbe annual rental, only such part of tbe cost of the repairs prorated as exceeded $300 was properly chargeable as an expense. Accordingly, he allowed plaintiff a credit of $300 per year, which had been previously deducted, in computing tbe net profits on which bis additional compensation was calculated. Defendant excepted to this part of tbe report, and plaintiff excepted to the allowance of only $300 annually instead of $307.05 annually. Tbe court below affirmed tbe report, and in doing so used tbe following language, viz.:
 

 “Complaint was made by the defendant that the matter of $300 rent should not be used an asset, but the contract was based upon a. change in the rent, and was changed from $8,000 to $8,500 by reason of the reduction in the rent, and, if the gross amount upon which the employee was to receive five per cent, was changed, and made a larger amount, because of the $300-change, certainly he is entitled to the benefit of the $300 change, as he was deprived of the $500 benefit under the original contract.”
 

 We find no error in tbe judgment of tbe court below upon this disputed point.
 

 Third. On this phase of the case the expert appointed by tbe court ruled in plaintiff’s favor to tbe extent of maintaining a lai‘ge part of bis claim. - His report shows that, when be examined tbe books of tbe defendant company, be found that as a basis of tbe annual depreciation charge of 10 per cent., tbe machinery, equipment, and fixtures, were entered at their new replacement value of $12,227.25 instead of at their sound value of $9,469.47. Tbe excess valuation was tbereiore $2,757.78, and, in adjusting tbe annual net profits, the expert added 10 per cent, of this amount, or $275.78, to the amount charged off each year on the books of the defendant company to cover tbe depreciation of its machinery, equipment, and fixtures. His action was approved by the court below. The plaintiff is satisfied with tbe judgment in this respect, and it is not seriously attacked by tbe defendant company. For our own part, we think it is correct.
 

 The defendant company furthermore contends that tbe additional compensation due plaintiff under bis contract should be subtracted as an item of expense from tbe amount of net profits found after tbe deduc
 
 *883
 
 tion of the federal taxes, and the percentage agreed on should be calculated on the remainder. It appears, however, that no such deduction was attempted during the period of plaintiff’s employment. The defendant company admits this, but urges that was because of its magnanimity. This particular claim was denied by the expert appointed by the court, on the ground that the additional compensation, as shown by the books, with full knowledge of the parties, was treated as a distribution of the profits. We do not find any error in this. The entries on the books of the defendant company and the settlements had from time to time in accordance therewith clearly reflect the understanding of the contracting parties. While the claim now urged on the part of the defendant company may serve a useful purpose by way of a defensive argument, since it was not asserted in its answer or reconventional demand, it affords no basis upon which a judgment can be rendered.
 

 The expert appointed by the court found that plaintiff was credited with $3,-485.49 on account of commissions, and that he had earned on said account $3,029.68; the excess of credits over the debits being $455.-81. The defendant company, however, demanded by way of reconvention only $220.84. In rendering judgment in its favor, the court cannot go beyond this amount.
 

 For the reasons assigned, the judgment appealed from is set aside, and it is now ordered that plaintiff’s demand be rejected. It is further ordered that there be judgment in favor of James Buckley & Co., Limited, plaintiff in reconvention, and against Herbert B. Homes, defendant in reconvention, in the full sum of $220.84, with legal interest thereon from judicial demand (November 14, 1919) until paid, and for all costs of suit.
 

 ST. PAUL, J., dissents.
 

 THOMPSON, J., takes no part.