SHANNON J. GREMILLION, Judge.
|tMs. Devra Renee Stockman appeals the judgment of the Workers’ Compensation Judge (WCJ) that dismissed her disputed claim for compensation against her employer, Medical Technology, Inc. (MTI). MTI has also appealed and argues that it should not have been assessed penalties and attorney fees for failure to authorize a cervical nerve-root block procedure. For the reasons that follow, we affirm in part and reverse in part.
FACTS
Ms. Stockman was employed by MTI on November 14, 2008, when she sustained an on-the-job injury in the course and scope of her employment as a delivery driver. Dr. Todd Drury, an Alexandria orthopedic surgeon, performed two surgeries on Ms. Stockman’s shoulders. About ten months after the accident, Ms. Stockman began to complain to Dr. Drury of neck pain. This court previously addressed Ms. Stockman’s claim and ordered MTI to authorize and pay for a cervical nerve-root block procedure recommended by Dr. Drury. Stockman v. Med. Tech., Inc., Í1-285 (La.App. 8 Cir. 12/14/11), 81 So.3d 198, writ denied, 12-145 (La.3/23/12), 85 So.3d 94. Ms. Stockman received weekly indemnity benefits from the date of the accident until October 9, 2010, when MTI quit paying. Ms. Stockman then amended her disputed claim to seek reinstatement of her indemnity benefits and related penalties and attorney fees. Because MTI had still not authorized the cervical nerve-root block, Ms. Stockman was again pursuing authorization for that course of treatment.[1]
|2Ms. Stockman’s medical picture is complicated because she has had at least two accidents since her on-the-job accident. During the weekend of October 2, 2010, Ms. Stockman was sitting in a chair on her porch when it collapsed. She had to be taken by ambulance to a local hospital. Afterward, she reported to Dr. Drury that she was experiencing severe neck pain radiating into both arms and had to use a cane to walk. Later, on April 3, 2012, Ms. Stockman was rear-ended by a motorist on MacArthur Drive in Alexandria. After that collision, she continued to see Dr. Drury and also Dr. Troy Vaughn, an Alexandria neurosurgeon, for continued neck complaints and lumbar spine complaints as well.
After trial, the WCJ took the matter under advisement. Oral reasons for judgment were handed down in which the WCJ found that Ms. Stockman’s neck complaints were not causally related to the on-the-job accident, but ordered MTI again to authorize the cervical nerve-root block and assessed MTI with attorney fees of $4,000.00 and a penalty of $2,000.00 for failing to authorize the testing. This appeal followed. Ms. Stockman argues that the WCJ erred in not finding the cervical complaints compensable and in finding that she is not disabled. MTI answered the appeal and urges that the award of *1220 attorney fees and penalties is unwarranted.
ANALYSIS
The factual findings of the WCJ are reviewed under the manifest error standard. Johnson v. Wal-Mart Stores, Inc., 11-1158 (La.App. 3 Cir. 2/8/12), 88 So.3d 527. This requires that, for us to reverse the WCJ, we must find that a review of the entire record demonstrates that the WCJ had no reasonable basis for his factual findings. Id. We are not permitted to skim the record to pick out those |.-Items that support or contradict the WCJ, but must review it thoroughly and entirely. Id.
Dr. Drury testified that Ms. Stockman’s medical profile was “complicated.” Specifically, he testified:
[T]he situation here in general is that you have a patient who has bilateral or both shoulders hurting from initial injury, doesn’t have much neck discomfort, and then undergoes two surgeries, and over time has developed some changes in her posture and some changes in her activity level, and things that are gradually turning into what would be referred to as a chronic pain.
[[Image here]]
Many patients that present in my clinic with shoulder pain actually have a cervical or a neck problem. And neck and shoulder problems often have overlap, so it’s a very important part of the physical exam to make some effort to differentiate the source of the pain as being from the neck or from the shoulder. And at that time [November 2008], based on the exam we saw that day, I felt that her symptoms were primarily shoulder.
[[Image here]]
From a medical perspective, I don’t find her progression and her appearance and the things that she complained with to be all that unusual because we see these type of issues commonly... .1 think the length of time is unusual, but I think in light of the complaints prior to that, which are basically bilateral symptoms, vague symptoms, and symptoms that have not been particularly responsive to treatment, in light of that, I don’t think it’s unusual that eventually her neck surfaces as a potential culprit.
This testimony does not exclude the possibility in Dr. Drury’s mind that Ms. Stock-man’s neck complaints were related to her shoulder injury. Indeed, they lend credence to the notion that her neck pain is a consequence of her continued shoulder problems. However, Dr. Drury also testified:
Q So it could be her neck symptoms could actually be unrelated to her work-related accident?
A That’s possible, yes.
|4Q It’s just as likely as if they were? A I would say that’s correct.
[[Image here]]
Q Okay, but none of those things were occurring within the first ten months?
A Well, that’s debatable. All of those things could have been occurring during the first ten months. That might be the reason that she’s not getting better. That’s the dilemma here, and that’s what you guys are going to have to settle.... because I don’t think I’m going to be able to clarify that for you.
The problem with eliciting an opinion from Dr. Drury is that he cannot take advantage of the results of the cervical nerve-root block he ordered. Without the cervical nerve-root block results, neither Dr. Drury nor the parties nor the WCJ had the benefit of a complete and accurate assessment of Ms. Stockman’s health. We reverse the trial court on the issue of *1221 causation and remand for proceedings consistent with this opinion.
The issue of the cervical nerve-root block raises another problem with the WCJ’s ruling. Dr. Drury unequivocally testified that Ms. Stockman was referred for the cervical nerve-root block, and that a miscommunication between his office and that of Central Louisiana Imaging Center resulted in the wrong test being conducted. The WCJ awarded Ms. Stockman penalties and attorney fees for MTI’s refusal to authorize the test. MTI argues that the award should be reversed. We disagree. Ms. Stockman initiated her disputed claim for compensation because MTI refused to authorize the test in the first place.
Ms. Stockman also complains that the WCJ manifestly erred in finding that she is not disabled. Again, review of such a finding is governed by the manifest error rule. Id. Ms. Stockman underwent an exhaustive functional capacity | ^evaluation in Alexandria, which was administered by Mr. Bruce Odell, a licensed occupational therapist. Mr. Odell concluded that Ms. Stockman is capable of competitive employment. Further, Dr. Drury agreed with Ms. Stockman’s vocational counselor that she could do work at Murphy Oil that was available, and Ms. Stockman testified that she did not apply for it, not because she was not capable of performing the work, but because she knew that she would not enjoy it. The problem arises, though, that if the cervical nerve-root block demonstrates a causal connection between Ms. Stockman’s shoulder injury and her neck pain, and if additional treatment is necessary that renders her unable to work, she will be permanently deprived of a remedy if the WCJ’s ruling stands. Accordingly, we reverse the WCJ’s ruling pending the results of the diagnostic testing.
For the foregoing reasons we (1) affirm the penalty/attorney fee award for failure to comply with the WCJ order requiring authorization of the diagnostic test; (2) reverse the WCJ judgment terminating benefits and enter a judgment rejecting the request that they be reinstated at this time; (3) remand for the cervical nerve-root block ordered by the WCJ; and (4) defer a ruling on the cost issue.
AFFIRMED IN PART AND REVERSED IN PART.
PETERS, Judge, agrees and assigns additional reasons.

. Dr. Drury testified that Ms. Stockman had undergone a cervical epidural injection on September 30, 2010. He distinguished this from the nerve-root block, and testified that the epidural injection was probably performed rather than the nerve-root block due to miscommunication between his office and the operating facility.